UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GERALD AND HELAINE        )
WARSHAW,                  )
                          )
           Plaintiffs     )
                          )
                          )
      v.                  )   Civil Action No. 11-12068-MAP
                          )
                          )
QBE INS. CORP., COMMUNITY )
ASSOCIATION UNDERWRITERS OF )
AMERICA, INC., COLDBROOKE )
SOUTH UNIT OWNERS' TRUST, )
BERKSHIRE INS. GROUP, INC., )
R.E.M. ENTERPRISES, INC., )
                          )
           Defendants     )

MEMORANDUM AND ORDER REGARDING REM'S MOTION TO
DISMISS THE COMPLAINT (Document No. 22), MOTION TO DISMISS
CROSS-CLAIMS BY CAU (Document No. 18), AND MOTION TO DISMISS
CROSS-CLAIMS BY QBE (Document No. 20)
August 22, 2012

NEIMAN, U.S.M.J.

Gerald and Helaine Warshaw ("Plaintiffs") have asserted seven claims, variously, against QBE Insurance ("QBE"), Community Association Underwriters of America, Inc. ("CAU"), Coldbrooke South Unit Owners' Trust ("Coldbrooke"), Berkshire Insurance Group ("Berkshire"), and R.E.M. Enterprises, Inc. d/b/a Alarm of Berkshire County ("REM"). Presently before the court are three motions by REM, one of which seeks judgment on the pleadings with regard to Plaintiffs' breach of contract claim (Count Seven), and two of which seek to dismiss CAU's and QBE's cross-claims for

contribution, indemnification, and breach of contract.[1]

The parties have consented to this court's jurisdiction over these motions. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. For the reasons that follow, REM's motion for judgment on the pleadings as to Plaintiffs' contract claim will be denied, but its motions to dismiss the cross-claims of both CAU and QBE will be allowed.

## I. Factual Background

Plaintiffs own a seasonal home located at Unit 15B of the Coldbrooke South Condominium Association in Lenox, Massachusetts. Coldbrooke, on behalf of and for the benefit of Plaintiffs, purchased through Berkshire, an insurance brokerage firm, property insurance underwritten by CAU, the managing agent for QBE. In accordance with a provision of the Rules and Regulations of Coldbrooke, Plaintiffs were required to keep their house at or above 62 degrees during the winter months. In an effort to meet that requirement, Plaintiffs contracted with REM to monitor their property for low temperatures. On or about March 31, 2011, personnel at Coldbrooke discovered water running at Plaintiffs' unit, the cause of which was subsequently determined to be a copper pipe that froze and then burst. Representatives from Coldbrooke contacted Berkshire, the insurance broker that procured the policy for Coldbrooke, which

---

[1]REM also moved to dismiss Coldbrooke's cross-claims for contribution, indemnification, breach of contract, and negligence. (See Document No. 38). That motion, which had not been timely opposed by Coldbrooke, was allowed by District Judge Michael A. Ponsor on July 23, 2012. Coldbrooke has since filed a motion to vacate the dismissal (see Document No. 44), in which it seeks leave of court to file an opposition to the motion or, in the alternative, to join the oppositions of QBE and CAU as set forth in Document Nos. 29 and 30.

subsequently informed CAU of the loss.  After sending an insurance adjuster to the unit, CAU informed Plaintiffs that the loss was "excluded and not covered."  Plaintiffs asked CAU for a second opinion; after sending a second adjuster to survey the unit, CAU maintained its position denying Plaintiffs' claim.

Plaintiffs allege in their complaint that QBE improperly denied coverage under its insurance contract, that CAU failed to procure adequate insurance coverage for them, that Berkshire also failed to procure adequate insurance for them and, as well, that Coldbrooke failed to procure adequate insurance for them.  Plaintiffs also seek damages from QBE pursuant to Chapter 93A for failing to acknowledge and act reasonably promptly with respect to claims arising under the insurance policy it issued, for refusing to pay Plaintiffs' reasonable claims, and for failing to effectuate a prompt, fair and equitable settlement.  In addition, Plaintiffs allege that REM violated their contract when it failed to properly maintain and service the low temperature alarm system.

CAU and QBE each responded by asserting cross-claims against REM for indemnification, contribution and breach of contract, all of which REM has moved to dismiss.  Coldbrooke also asserted a variety of cross-claims but, as noted, REM's motion to dismiss those claims is not before this court.

## II.  Discussion

The court will first address REM's motion for judgment on the pleadings targeting Count Seven of Plaintiffs' complaint.  It will then turn its attention to REM's motions to dismiss the cross-claims of CAU and QBE.

A.  REM's motion to dismiss Plaintiffs' Breach of Contract Claim

Pursuant to Fed. R. Civ. P. 12(c), REM has moved for judgment on the pleadings on Plaintiffs' breach of contract claim, Count Seven.  The standard for evaluating a motion for judgment on the pleadings is essentially the same as that for a motion to dismiss under Rule 12(b)(6).  *See Remexcel Managerial Consultants, Inc. v. Arlequin*, 583 F.3d 45, 49 n. 3 (1st Cir. 2009).  As with a motion to dismiss, to survive a motion for judgment on the pleadings a complaint must allege enough facts so that the claim is "plausible on its face," *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56, 570 (2007), *i.e.*, the factual content pled should "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   A court, however, "may enter judgment on the pleadings only if the properly considered facts conclusively establish the movant's point."  *R.G. Financial Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006).

As an initial matter, it should be noted, Plaintiffs argue that REM's motion should be converted into one for summary judgment because REM relies on a document outside the pleadings, *i.e.*, the service agreement between REM and Plaintiffs  (the "Agreement").  REM disagrees, reasoning that the Agreement is cited by Plaintiffs in their complaint and may therefore be relied on and considered by the court when addressing its motion for judgment on the pleadings.  Plaintiffs demur, citing paragraph 10 of the complaint, which states, without mentioning the Agreement itself, only that they "contracted with the defendant REM . . .  to monitor the Subject Property for low temperatures within the Subject Property."  Plaintiffs maintain that the Agreement,

which they signed in 2006, does not govern the relationship between the parties because, by its terms, it is valid for only one year from the date of signing. Simultaneously, however, Plaintiffs allege that some sort of contractual relationship between the parties existed "at all times relevant" and that discovery is needed to determine the precise contours of that relationship.

For its part, the court concludes that its consideration of the proffered Agreement is proper, given the pivotal role of the Agreement as, at least, the starting point of the parties' contractual relationship, and does not necessitate the conversion of REM's motion to one for summary judgment. *See R.G. Financial Corp.*, 446 F.3d at 182 (in a motion for judgment on the pleadings "[t]he court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice"). That said, it is nonetheless apparent that there are contested facts with respect to the Agreement, most notably whether it embodies the complete contractual relationship between the parties; Plaintiffs assert that the Agreement may not be the entire agreement between the parties and REM has not submitted any affidavits indicating otherwise. Given the possibility that modifications or revisions to the Agreement exist and reading the pleadings in a light most favorable to Plaintiffs, the non-moving parties, the court finds that such factual issues make it impossible for the court to rule on REM's motion at this time. Accordingly, REM's motion for judgment on the pleadings is denied insofar as it seeks dismissal of Plaintiffs' contract claim.

To be sure, in its motion for judgment on the pleadings, REM requests, in the

alternative to a judgment in its favor, that the court simply order REM to pay the nominal liquidated damages provided for in the Agreement. Plaintiffs object, arguing that even if the Agreement governs the relationship between the parties, the liquidated damages provision is unconscionable and should not be enforced.

Since, as explained, the court believes that additional discovery is necessary to determine whether the Agreement, as proffered, controls the relationship between Plaintiffs and REM, the court is similarly without sufficient information to make any determination with regard to unconscionability in its liquidated damages clause, itself a fact-based evaluation. *See Agri-Mark, Inc., v. Niro, Inc.*, 233 F. Supp. 2d 200, 211 (D. Mass. 2002) ("a court may consider the following factors when determining whether a clause excluding consequential damages is unconscionable: (1) the sophistication of the parties; (2) the plaintiff's clear intent to accept the risk of consequential damages; and (3) the existence of a minimally adequate remedy such as a refund of the contract price.") (citing *Canal Elec. Co. v. Westinghouse Elec. Corp.* 548 N.E.2d 182, 185 (Mass. 1990)). Accordingly, the court will deny without prejudice REM's request to award liquidated damages pursuant to the Agreement.

B. <u>REM's Motion to Dismiss Cross-Claims of CAU and QBE</u>

As indicated, CAU and QBE have brought identical cross-claims against REM. To refresh, CAU is the managing agent of QBE Insurance Corporation. After Plaintiffs reported their claim to Coldbrooke (the condominium association), Coldbrooke reported it to Berkshire, the insurance broker, who in turn informed CAU of the loss. In response, counsel for CAU advised Coldbrooke that the loss was "excluded and not

6

covered." As a result, Plaintiffs have asserted claims for breach of contract, violation of Chapter 93A, and declaratory judgment against QBE, and have asserted a claim for negligence against CAU. CAU and QBE, in turn, have asserted cross-claims of indemnification (Count One), contribution (Count Two), and breach of contract (Count Three) against REM, which cross-claims are the target of REM's motions to dismiss. Since CAU and QBE assert the same cross-claims and because REM has moved to dismiss those claims on the same grounds, the court will address REM's motions jointly. As a preliminary matter, however, CAU and QBE, like Plaintiffs, argue that REM's motions, which rely on one document (the Agreement) outside the pleadings, are premature and should be denied. For the reasons that follow, the court disagrees and, in fact, will allow both motions to dismiss.

1. REM's motions to dismiss CAU's and QBE's cross-claims for breach of contract

REM argues that in the absence of any contract between it and either CAU or QBE, their cross-claims for breach of contract must fail. In response, CAU and QBE argue that, as insurers of the property protected by REM's alarm, they are third-party beneficiaries of any contract between REM and Plaintiffs. CAU and QBE cite *Orell v. UMass Memorial Medical Center, Inc.*, 203 F. Supp. 2d 52, 67 (D. Mass. 2002), for the proposition that "a plaintiff may sue for breach of a contract to which it is not a party where it is a third-party beneficiary of that contract."

Even without more information regarding the parameters of the Agreement, it is clear that CAU's and QBE's claims to third-party interests are too tenuous to proceed.

In Massachusetts, "third-party beneficiaries may only enforce contracts when they are 'intended beneficiaries' of the contract." *Haggins v. Verizon New England, Inc.*, 648 F.3d 50, 57 (1st Cir. 2011) (quoting *Miller v. Mooney*, 725 N.E.2d 545, 549-50 (Mass. 2000). "It must appear from the language and circumstances of the contract that the parties to the contract 'clearly and definitely' intended the beneficiaries to benefit from the promised performance." *Id.* (quoting *Anderson v. Fox Hill Vill. Homeowners Corp.*, 676 N.E.2d 821, 822 (Mass. 1997)). Here, the parties have alleged no such contractual intent, nor have they pointed to any circumstances from which the court may infer such intent. If anything, the Agreement to which QBE and CAU claim to be third-party beneficiaries specifically precludes an inference of any intent to benefit a third-party insurer; in fact, the Agreement includes an entire section disclaiming liability and states that "[REM] is not an insurer" and, indeed, that Plaintiffs, as subscribers, must hold *REM* harmless and indemnify *it.* While QBE and CAU argue that REM's motion should be denied so that they may proceed to discovery to determine whether evidence exists supporting their third-party standing, the court is not convinced that they have alleged any facts making such a claim plausible.

Nor have CAU and QBE stated claims for breach of contract by painting such a breach as a tort committed against them by REM. To be sure, CAU and QBE argue that a defendant, in this case REM, is "liable to third persons not parties to [a] contract who are foreseeably exposed to danger and injured as a result of its negligent failure to carry out that obligation." *Parent v. Stone & Webster Engineering Corp.*, 556 N.E.2d 1009, 1012 (Mass. 1990). As distinct from the facts in *Paren*t, however, that argument

does not apply to the present action, which in no way implicates any tortious conduct resulting in personal injury.  As the Supreme Judicial Court since made clear, "a failure to perform a contractual obligation is not a tort in the absence of a duty to act apart from the promise made." *Anderson v. Fox Hill Village Homeowners Corp.*, 676 N.E.2d 821, 823 (Mass. 1997).  Thus, in the court's view, QBE and CAU's attempt to paint REM's "'negligent failure to carry out the obligation' of low temperature monitoring" as sounding in tort, which in turn would give rise to QBE's and/or CAU's "foreseeable reliance" on that obligation, is misplaced.  REM had no independent duty to protect Plaintiffs' insurers from a loss.  That monetary loss, stemming from the insurers' contractual obligation to Plaintiffs, is quite distinguishable from the physical injury that results when "third persons not parties to the contract are foreseeably exposed to danger and injured." *Parent*, 556 N.E.2d at 1012.

In sum, CAU and QBE can not demonstrate that the Agreement between Plaintiffs and REM was intended to benefit them as third-parties or exposed them to danger or injured them in the sense contemplated by the Supreme Judicial Court in *Parent*.  Accordingly, REM's motions to dismiss CAU's and QBE's cross-claims for breach of contract will be allowed.

    2. <u>REM's motions to dismiss QBE's and CAU's cross-claims for contribution</u>

CAU and QBE next assert rights to contribution from REM pursuant to Mass. Gen. Laws c. 231B § 1(a), which provides for such a right among two or more persons found jointly liable for injury to a person or property.  Specifically, section 1(a) states that "where two or more persons become jointly liable in tort for the same injury to

9

person or property, there shall be a right of contribution among them even though judgment has not been recovered against all or any of them." Gen. Laws c. 231B § 1(a).

To the extent CAU and QBE attempt to characterize their relationships with REM as "joint tortfeasors," however, that characterization distorts the scope of joint liability under section 1(a). In Massachusetts, "the right to contribution, unlike the right to indemnity, is based on the shared fault of the joint tortfeasors." *Slocum v. Donahue*, 693 N.E.2d 179, 182 (Mass. App. Ct. 1998). Contribution, then, is appropriate when two parties share responsibility for the same injury. Here, in contrast, CAU is alleged to have negligently procured inadequate insurance for Plaintiffs, resulting in a gap in their coverage, and QBE is alleged to have improperly denied Plaintiffs' insurance claim in breach of Plaintiffs' insurance contract with it. Quite apart from those claims, REM is alleged to have injured Plaintiffs by breaching *their* contract, resulting in damage to Plaintiffs' property. As is clear, the parties, to the extent they are tortfeasors at all, are alleged to have breached separate and distinct duties, resulting in separate and distinct injuries to Plaintiffs. As such, CAU and QBE are not even potential "joint" tortfeasors within the meaning of the law and, accordingly, are not entitled to contribution from REM. *See id.*

3. REM's motions to dismiss CAU's and QBE's cross-claims for indemnification

CAU and QBE also seek from REM either contractually based indemnification or indemnification based on common-law principles. The court is not persuaded that either a contractual or common law right to indemnification exists and, for the reasons

10

that follow, will allow REM's motions to dismiss those cross-claims.

### a. Implied contractual-based Indemnification

A contractual right to indemnification "may be implied from the nature of the relationship between the parties." *Araujo v. Woods Hole, Martha's Vineyard, Nantucket S.S. Authority*, 693 F.2d 1, 2 (1st Cir. 1982). A right to indemnification, however, will not be implied merely because one party, subject to tort liability, believes another party played a role in causing the same injury. *See Id.* Instead, "a contractual right to indemnification will only be implied when there are unique special factors demonstrating that the parties intended that the would-be indemnitor bear the ultimate responsibility for the plaintiff's safety." *Id.* In determining what, if any, special factors may exist to indicate an implied right to indemnity, the court looks first to the parties' contract. *See Samos Imex Corp. v. Nextel Communications*, Inc., 20 F.Supp.2d 248, 251 (D. Mass. 1998) ("For both express and implied indemnification, the inquiry commences with the parties' contract.).

Here, in support of their argument that they have implied rights to indemnity, CAU and QBE point to their reliance on the execution of the duties described in the contract between Plaintiffs and REM to monitor the unit temperature. Such reliance, CAU and QBE reason, is a "special factor" that should lead to a finding of an implied right to indemnity by REM. The court is not persuaded.

An implied right to indemnity is not recognized based only on the reliance of the party seeking indemnification; an implied right to indemnity arises from the intent of the parties' to the contract. *See Araujo,* 693 F.2d at 2; *see also Samos Imex Corp.*, 20

F.Supp.2d at 251.  Here, not only is there no contract between REM and either CAU or QBE, there is also no evidence indicating any intent by REM to indemnify CAU and/or QBE.  As it turns out, the only mention of indemnification in the contract is the provision stating that *Plaintiffs* "agree to indemnify, defend and hold [*REM*] harmless from any and all claims or lawsuits."  (Doc. 38 ¶ 17).  CAU and QBE, of course, seek to pursue cross-claims for indemnification from REM, not from Plaintiffs.  Moreover, given the explicit disclaimer provisions in the Agreement and the lack of any allegations that would indicate otherwise, no intent to indemnify an unnamed third party can reasonably be inferred, and "such a radical departure from the reasonable expectation of the parties, considering their relationship, is unwarranted in the absence of a clear expression in the contract."  *Fall River Housing Authority v. H.V. Collins Co.*, 604 N.E.2d 1310, 1314 (Mass. 1992).

    b.  Common law indemnification

QBE and CAU next argue that under common law principles they have a right to indemnification as the comparatively faultless parties that have been exposed to liability by another's wrongdoing.  Indemnification of this kind is available "when the party seeking it was merely passively negligent while the would-be indemnitor was actively at fault.*"  Araujo v. Woods Hole, Martha's Vineyard, Nantucket S.S. Authority*, 693 F.2d 1, 3 (1st Cir. 1982).  "Passive negligence has been limited to instances in which the indemnitee was vicariously or technically liable."  *Id*.

In Massachusetts, however, this doctrine "has been recognized only in personal injury tort actions."  *Nicolaci v. Anapol*, 387 F.3d 21, 27 (1st Cir. 2004).  *See also*

*Decker v. Black & Decker Mfg. Co.*, 449 N.E.2d 641 (Mass. 1983); *Rathbun v. W. Mass. Elec. Co.*, 479 N.E.2d 1383 (Mass. 1985). In *Nicolaci*, the First Circuit declined to extend the common law indemnity doctrine to encompass a fraudulent transfer claim in the absence of any Massachusetts cases recognizing such an expansion, explaining that "Federal courts sitting in diversity should be cautious about 'pushing state law to new frontiers.'" *Nicolaci*, 387 F.3d at 27 (citing *Kelly v. Marcantonio*, 187 F.3d 192, 199 (1st Cir. 1999)). Similarly here, QBE and CAU have cited no case, and the court is aware of none, in which a common law right to indemnity has been recognized in a breach of contract case. Even if the court were to view Plaintiffs' breach of contract claim against REM as a negligence claim, as CAU and QBE suggest, that claim still falls short of a personal injury claim in which common law indemnification principles have been recognized. Accordingly, REM's motions to dismiss CAU's and QBE's indemnification claims will be allowed.

III. Conclusion

For the reasons stated, REM's motion to dismiss Plaintiff's breach of contract claim (Document No. 22) is DENIED. In addition, REM's motions to dismiss CAU's and QBE's cross-claims for breach of contract, contribution, and indemnification (respectively, Document Nos. 18 and 20) are ALLOWED.

IT IS SO ORDERED.

/s/ Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge